NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

———————————————

IN RE TERMINATION OF
PARENTAL RIGHTS AS TO N.R., C.R., and K.R.

No. 1 CA-JV 23-0205
FILED 06-13-2024

———————————————

Appeal from the Superior Court in Mohave County
No. S8015JD202200092
The Honorable Rick A. Williams, Judge

**AFFIRMED**

———————————————

COUNSEL

Harris & Winger, P.C., Flagstaff
By Chad Joshua Winger
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Autumn Spritzer
*Counsel for Appellee Arizona Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge D. Steven Williams delivered the Court's decision, in which Presiding Judge Daniel J. Kiley and Judge Kent E. Cattani joined.

---

**W I L L I A M S**, Judge:

¶1        Michael R. ("Father") appeals the juvenile court's order terminating his parental rights. For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

¶2        Father and Amanda R. ("Mother")[1] have three children in common, born in 2011, 2013, and 2016, respectively.

¶3        In June 2022, the Arizona Department of Child Safety ("DCS") took temporary custody of the children and petitioned for dependency due to the parents' neglect, ongoing substance abuse, and history of domestic violence. One month later, the juvenile court adjudicated the children dependent and affirmed their placement in DCS custody.

¶4        During the dependency, DCS offered the parents reunification services, including case management, child and family team meetings, individual counseling, parenting classes, parenting time, substance abuse treatment, drug testing, team decision-making meetings, and transportation.

¶5        Father minimally engaged in these services. Early in the dependency, DCS referred him to the Arizona Families F.I.R.S.T. ("AFF") program for substance abuse treatment. Though he completed an intake in July 2022, he did not participate further in the program.

¶6        DCS also referred Father to Physician Services, Inc. ("PSI") for drug testing. Father tested twice in July 2022. His first test was positive for amphetamine, methamphetamine, and THC. His second test was positive for amphetamine and methamphetamine. He did not test again for over a year.

---

[1] Mother also appealed the juvenile court's termination order. However, after she failed to file an opening brief, we dismissed her appeal.

**¶7**         In August 2022, Father enrolled with Mohave Mental Health Clinic, Inc. ("MMHC") for substance abuse services. At MMHC, he participated sporadically in drug counseling and group meetings for about six months. In February 2023, he told a therapist he had a lengthy history of abusing methamphetamine, that he had suffered two heart attacks because of his drug use, and that his longest period of sobriety in the past twenty-five years was approximately seven days. Father was admitted into a high-intensity residential treatment program. But after just five days, he left the program. Ultimately, the only service Father completed through MMHC was a parenting class, which he finished in April 2023.

**¶8**         In May 2023, the juvenile court changed the case plan from family reunification to severance and adoption. Two weeks later, DCS moved to terminate Father's parental rights, alleging two statutory grounds as a basis: (1) the children's out-of-home placement for nine months and (2) Father's substance abuse. *See* A.R.S. § 8-533(B)(8)(a), (3).

**¶9**         That same month, both parents moved to the Phoenix area and enrolled in an out-patient substance abuse treatment program offered by Frontline Empire, LLC ("Frontline"). Father began to attend group therapy at Frontline in June. In July, he started individual counseling and completed a psychiatric evaluation.

**¶10**         In August 2023, the juvenile court held a termination adjudication hearing. Though the court commended the parents for engaging in substance abuse services "for approximately three months" before trial, it also noted the parents "had multiple opportunities during the case to show sobriety and stability," but had not yet done so. The court found that DCS made reasonable and diligent efforts to provide the parents with appropriate reunification services and that "neither Mother nor Father ha[d] completed any portion of their case plan with respect to addressing their significant substance abuse history." The court terminated both parents' rights to their children.

**¶11**         Father timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 8-235(A), 12-120.21(A)(1), and 12-2101(A)(1).

## DISCUSSION

**¶12**         Before terminating parents' rights to their children, a court must find at least one statutory ground under A.R.S. § 8-533(B) by clear and convincing evidence, *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000), and that termination is in the children's best interests by a

preponderance of the evidence, *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005). We will "affirm a termination order unless the juvenile court abuses its discretion or the court's findings are not supported by reasonable evidence." *Timothy B. v. Dep't of Child Safety*, 252 Ariz. 470, 474, ¶ 14 (2022); *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 478, ¶ 30 (2023). We do not reweigh the evidence, but instead "look only to determine if there is evidence to sustain the court's ruling." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).

## I. Reasonable Evidence Supports the Juvenile Court's Best-Interests Finding.

**¶13**  Father does not challenge the juvenile court's finding that statutory grounds existed to terminate his parental rights under A.R.S. §§ 8-533(B)(3) and (B)(8)(a). *See Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 577, ¶ 5 (App. 2017) (finding that by failing to challenge a ground for termination, the parent "abandoned and waived any contention that the court erred in granting severance on that basis"). Instead, Father only challenges the juvenile court's finding that termination of his parental rights was in the children's best interests.

**¶14**  In determining the children's best interests, the court must consider the totality of circumstances at the time of the termination adjudication hearing, including the children's adoptability and the parents' rehabilitation. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 148, ¶ 1 (2018). The court must also consider whether the children will benefit from the termination or be harmed if the relationship continued. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 16 (2016).

### A. The Juvenile Court's Benefit Finding

**¶15**  Father argues the juvenile court abused its discretion by finding the children would benefit from termination of his parental rights merely because they were "adoptable" and in "potential adoptive placement[s]." Relying on *Titus S. v. Dep't of Child Safety*, Father asserts that adoptability alone is insufficient to establish a benefit from termination and the court must also determine that a child's adoption is *likely*. 244 Ariz. 365, 370–71, ¶ 22 (App. 2018).

**¶16**  The juvenile court may find a child would benefit from termination if there is an adoption plan or if the child is adoptable. *Alma S.*, 245 Ariz. at 150–51, ¶ 13. The court may also find that a child will benefit from "the stability an adoption would provide[.]" *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 352 (App. 1994). Thus, when a prospective

adoptive placement is meeting the child's needs and the child's adoption is both legally possible and likely, the court may find that termination of the parental rights is in the child's best interests. *Demetrius L.*, 239 Ariz. at 4, ¶ 12.

**¶17** In this case, the record supports the juvenile court's findings that the children will benefit from the termination of the parent-child relationship. The DCS case manager testified the children are adoptable, that they are in adoptive placements, and that one of the placements is willing to adopt all three children. The case manager further testified that, even if the children could not all be adopted by the same placement, the placements are committed to maintaining the children's relationships with each other after the adoptions. This testimony supports the court's finding that the children were adoptable and in adoptive placements. From this testimony the court could reasonably infer that the proposed adoption, or adoptions, were legally possible and likely to occur if the parent-child relationships were terminated. *See id.* at 3, ¶ 9.

**¶18** Relying on *Titus S.*, Father contends a child's adoptability is irrelevant unless the court finds a "return to [the] parent is unlikely." 244 Ariz. at 370–71, ¶ 22. He argues the court could not have found that a return to the parent was "unlikely" because DCS never attempted to preserve the family unit and the court did not consider his recent sobriety.

**¶19** His argument fails for several reasons. First, *Titus S.* does not support his contention that the juvenile court must consider whether a "return to parent is unlikely" before concluding a child will benefit from adoption. 244 Ariz. at 370–71, ¶ 22. Second, by failing to challenge grounds for termination, he has conceded the court's finding that DCS "made a diligent effort to provide appropriate reunification services[.]" Moreover, Father fails to identify any additional reunification services he believes DCS should have offered him, but did not, to preserve the family. Third, the court did not ignore Father's participation in substance abuse services at the time of the termination adjudication hearing. To the contrary, the court commended the parents for engaging in treatment. But the court also considered other factors, including the children's out-of-home placement for over a year and evidence that the parents "had multiple opportunities during the case to show sobriety and stability and yet [had] not done so[.]"

**¶20** On this record, the juvenile court did not abuse its discretion by finding the children would benefit from termination of the parent-child relationship.

### B.      The Juvenile Court's Detriment Finding

**¶21**          Father next challenges the juvenile court's finding the children would be harmed if the parent-child relationship continued. He argues the record showed the children are bonded to him and, therefore, the court erred by concluding that an ongoing parent-child relationship would harm the children.

**¶22**          The juvenile court, however, expressly considered Father's bond, as well as the children's desire to reunify with their parents. Although a bonded relationship is a factor for the court to consider, it is not dispositive in addressing the children's best interests. *See Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98–99, ¶ 12 (App. 2016). Against this familial bond, the court considered other factors including the fact the children had "suffered for years" due to Father's "inability to provide a safe, stable home" and his neglect of their "medical, dental, emotional, and educational needs." In weighing the evidence, the court concluded "the children deserve to have the opportunity to thrive in a safe, sober, and stable environment" and that if the court were to deny the termination, the children "will be at risk of future abuse or neglect."

**¶23**          Father asserts this finding was error because there is no real risk for further harm or neglect to the children because DCS, as their legal custodian, can protect them from harm while he establishes sobriety. But accepting his contention that the children should remain in DCS care until he can show he is sober would leave them in foster care for an indefinite period. Arizona law recognizes that long-term foster care can be harmful to children. *See Timothy B.*, 252 Ariz. at 476, ¶ 23 (explaining that "the legislature's intent to avoid having children linger in foster care echoes throughout other grounds justifying termination in § 8-533(B)," including (B)(3) and (B)(8)). And "a child's interest in permanency must prevail over a parent's uncertain battle with drugs." *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 287, ¶ 17 (App. 2016).

**¶24**          Additionally, by not challenging the court's A.R.S. § 8-533(B)(3) finding, Father has conceded he was "unable to discharge [his] parental responsibilities because of . . . chronic abuse of dangerous drugs, and alcohol, and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period." Accordingly, the juvenile court did not abuse its discretion by concluding the children would suffer a detriment if they maintained a parent-child relationship with Father.

### C. The Children's Right to Familial Integrity

¶25 Father also argues the juvenile court must consider the children's fundamental liberty interest in an intact family as part of its best-interests analysis. He cites *Kent K.* for the position that "until a court finds grounds for termination, [the] parent and child 'share a vital interest in preventing erroneous termination of their natural relationship.'" 210 Ariz. at 286, ¶ 35 (*quoting Stantosky v. Kramer*, 455 U.S. 745, 760 (1982)).

¶26 Father offers no legal authority to show he has standing to challenge the children's fundamental liberty interests once his parental rights were terminated. *See In re O.M.*, 254 Ariz. 543, 545, ¶ 9 (App. 2023) ("A parent lacks standing to challenge a child's placement once parental rights are terminated."). Regardless, the finding of a statutory ground to terminate parental rights is synonymous to a finding of parental unfitness. *Alma S.*, 245 Ariz. at 150, ¶ 9. Thus, in the best-interests stage of the analysis, "[t]he weight of the presumption that the child shares the parent's interest in preserving the family relationship is greatly reduced by the potential harm to the child from maintaining a relationship with an unfit parent." *Kent K.*, 210 Ariz. at 285, ¶ 31 (citations omitted). The court's "foremost concern" then becomes "the child's interest in stability and security." *Jessie D. v. Dep't of Child Safety*, 251 Ariz. 574, 583, ¶ 27 (2021) (quotations and citations omitted). Here, the juvenile court carefully considered the totality of the circumstances—including evidence of the children's bond to their parents and their desire to return home—in determining that termination of parental rights was in the children's best interests.

### CONCLUSION

¶27 Read as a whole, Father's arguments on appeal request that we reweigh the evidence, which we will not do. Because reasonable evidence supports the juvenile court's best-interests finding, we affirm the court's order terminating Father's parental rights.

